1

Michael K. Mullen, Esq.
Sandra Calvert Nathans, Esq.
Schenck, Price, Smith & King, LLP

2

220 Park Avenue
Florham Park, NJ  07932-0991

3

(973) 239-1000
mkm@spsk.com; scn@spsk.com
*Attorneys for Plaintiff*

4

*Capitol Specialty Insurance Corporation*

5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

6

7

CAPITOL SPECIALTY INSURANCE
CORPORATION,

**Civil Action No.**

8

Plaintiff,

9

v.

**COMPLAINT FOR**

STRATEGIC INSURANCE PARTNERS, INC.,

**DECLARATORY RELIEF**

10

Defendant.

11

12

Plaintiff, Capitol Specialty Insurance Corporation ("CSIC"), by and through its attorneys,

13

for its complaint against Defendant Strategic Insurance Partners, Inc. ("SIP") alleges as follows.

14

**INTRODUCTION**

15

1.      By this complaint, CSIC seeks a declaratory judgment that an insurance policy that

CSIC issued to SIP —i.e., Insurance Agents and Brokers  Professional Liability Policy No.

16

IA2014073-05 (the "2018-19 Policy") - does not afford coverage to SIP for claims asserted against

17

SIP in the action captioned: *Tipan-Villana v. Farkouh, et al.*, Docket No. ESX-L-912-16, pending

18

in the New Jersey Superior Court, Essex County (the "Tipan-Villana Action").  SIP obtained the

19

2018-19 Policy through misrepresentation of material facts and concealment of material facts in

{02188569;1 }

20

CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF

1    five successive, annual applications for insurance that SIP submitted to CSIC.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § § 1332, 2201, and 2202.  CSIC is a Wisconsin corporation with its principal place of business in 1600 Aspen Commons, Middleton, Wisconsin.  Upon information and belief, SIP is a New Jersey corporation with its principal place of business at 7822 Kennedy Boulevard, North Bergen, New Jersey.  Accordingly, there is complete diversity of citizenship between the parties.

3.     The matter in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000).  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because SIP resides in this judicial district, SIP conducts business in this judicial district, and a substantial part of the events or omissions giving rise to this claim took place in this district.

## PARTIES

5.     Plaintiff, CSIC, is a corporation organized and existing under the laws of Wisconsin with its principal place of business in Middleton, Wisconsin. CSIC does business in New Jersey as an authorized surplus lines insurer.

6.     Upon information and belief, defendant, SIP, is a corporation organized and existing under the laws of New Jersey with its principal place of business in Nutley, New Jersey.  SIP is an insurance agent and broker that engages in the business of procuring policies of liability insurance for its customers from insurers.

## GENERAL ALLEGATIONS

### The Underwriting and Issuance of the CSIC Policies

7.     The process of underwriting an insurance policy involves the receipt, review and

2

CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF

1 analysis of timely and accurate information supplied by the applicant in order to permit the insurer

2 to fairly evaluate the potential risks for which coverage is sought and to determine whether, and

upon what terms, a policy of insurance will be issued.

3

### The Underwriting and Issuance of the 2014-15 Policy

4       8.      SIP first obtained a policy of insurance from CSIC for a policy period of September

5 1, 2014 to September 1, 2015. In connection with its effort to procure insurance from CSIC, SIP

submitted an application for insurance, a copy of which is attached hereto as Exhibit A (the "2014-

6 15 Application").

7       9.      The 2014-15 Application was executed by David Wildt on behalf of SIP on July 21,

8 2014 with the following representations:

9       The person signing this Application declares that to the best of his or her knowledge
        the statements set forth herein and the information in the materials submitted
        herewith are true and correct and that reasonable efforts have been made to obtain
10      sufficient information from all proposed Insureds to facilitate the proper and
        accurate completion of this Application for the proposed policy.  Signing this
        Application does not bind the undersigned to purchase the insurance, but this
11      Application shall be the basis of the contract should a policy be issues.

        It is agreed by all concerned that the particulars and statements contained in this
12      Application are true and shall be deemed material to the decision of the Company
        to issue the insurance.  The undersigned agree that if after the date of this
13      Application and prior to the effective date of any policy based on this Application,
        any occurrence, event or other circumstance should render any of the information
        contained in this Application inaccurate or incomplete, then the undersigned shall
14      notify the Company of such occurrence, event or circumstance and shall provide
        the Company with information that would compete, update or correct such
15      information.  In such event, the Company in its sole discretion may modify or
        withdraw any outstanding quotation.

16 *See* Ex. A, p. 5.

        10.     At the time of execution of the 2014-15 Application, Mr. Wildt was a vice-president

17 of SIP.

18      11. Question 18 of the 2014-15 Application asked:

19

18.    Does any owner, director, officer, employee, partner or independent contractor of the Applicant have knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim?

12.    SIP answered "no" to this question.

13.    In reliance upon the accuracy and completeness of the information provided to CSIC during the underwriting process, including the 2014-15 Application, CSIC issued Insurance Agents and Brokers Professional Liability Policy No. IA2014073-01 (the "2014-15 Policy") to SIP for the claims made policy period from September 1, 2014 to September 1, 2015.

## The Underwriting and Issuance of the 2015-16 Policy

14.    In July 2015, SIP applied for renewal of coverage from CSIC.

15.    In connection with its effort to procure insurance from CSIC, SIP submitted an application for insurance, a copy of which is attached hereto as Exhibit B (the "2015-16 Application").

16.    The 2015-16 Application was executed by David Wildt on behalf of SIP on July 19, 2015 with the following representations:

> The Applicant acknowledges that the answers provided herein are based on a reasonable inquiry and/or investigation.  The Applicant warrants that the above statements and particulars together with any attached or appended documents are true and complete and do not misrepresent, misstate or omit any material facts.  The Applicant agrees to notify us of any material changes in the answers to the questions on this questionnaire which may arise prior to the effective date of any policy issued pursuant to this questionnaire and the Applicant understands that any outstanding quotations may be modified or withdrawn based upon such changes at our sole discretion.   Completion of this form does not bind coverage.   Applicant's acceptance of the company's quotation is required prior to binding coverage and policy issuance.  All written statements and materials furnished to the company in conjunction with this application are hereby incorporated by reference into this application and made a part of this application.

*See* Ex. B, p. 7.  Mr. Wildt was, at the time of execution of the 2015-16 Application, a vice-president of SIP.

4

17.     Question 6 of the 2015-16 Application asked:

> 6.     After inquiry with each person as appropriate, are you, or any of your partners, officers, directors, solicitors, agents, brokers or employees, aware of any circumstances, acts, errors, omissions, or any allegations or contentions of any incident which may result in a claim?

18.     SIP answered "no" to this question.

19.     In reliance upon the accuracy and completeness of the information provided to CSIC during the underwriting process, including the 2015-16 Application, CSIC issued Insurance Agents and Brokers Professional Liability Policy No. IA2014073-02 (the "2015-16 Policy") to SIP, for the claims made policy period from September 1, 2015 to September 1, 2016.

## The Underwriting and Issuance of the 2016-17 Policy

20.     In July 2016, SIP once again applied for renewal of coverage from CSIC.

21.     In connection with its effort to procure insurance from CSIC, SIP submitted an application for insurance, a copy of which is attached hereto as Exhibit C (the "2016-17 Application").

22.     The 2016-17 Application was executed by David Wildt on behalf of SIP on July 17, 2016 with the following representations:

> The Applicant acknowledges that the answers provided herein are based on a reasonable inquiry and/or investigation. The Applicant warrants that the above statements and particulars together with any attached or appended documents are true and complete and do not misrepresent, misstate or omit any material facts. The Applicant agrees to notify us of any material changes in the answers to the questions on this questionnaire which may arise prior to the effective date of any policy issued pursuant to this questionnaire and the Applicant understands that any outstanding quotations may be modified or withdrawn based upon such changes at our sole discretion. Completion of this form does not bind coverage. Applicant's acceptance of the company's quotation is required prior to binding coverage and policy issuance. All written statements and materials furnished to the company in conjunction with this application are hereby incorporated by reference into this application and made a part of this application.

*See* Ex. C, p. 7.  Mr. Wildt was, at the time of execution of the 2016-17 Application, a vice-

5

1    president of SIP.

2           23.    Question 6 of the 2016-17 Application asked:

3                  6.      After inquiry with each person as appropriate, are you, or any of your
                           partners, officers, directors, solicitors, agents, brokers or employees, aware
                           of any circumstances, acts, errors, omissions, or any allegations or
4                          contentions of any incident which may result in a claim?

           24.    SIP answered "no" to this question.

5
           25.    In reliance upon the accuracy and completeness of the information provided to

6    CSIC during the underwriting process, including the 2016-17 Application, CSIC issued Insurance

7    Agents and Brokers Professional Liability Policy No. IA2014073-03 (the "2016-17 Policy") to

     SIP, for the claims made policy period from September 1, 2016 to September 1, 2017.
8
                          **The Underwriting and Issuance of the 2017-18 Policy**

9           26.    In July 2017, SIP once again applied for renewal of coverage from CSIC.

10          27.    In connection with its effort to procure insurance from CSIC, SIP submitted an

11   application for insurance, a copy of which is attached hereto as Exhibit D (the "2017-18

     Application").
12
            28.    The 2017-18 Application was executed by Mr. Wildt on behalf of SIP in or about

13   July 2017 with the following representations:

14                 The Applicant acknowledges that the answers provided herein are based on a
                   reasonable inquiry and/or investigation.  The Applicant warrants that the above
                   statements and particulars together with any attached or appended documents are
15                 true and complete and do not misrepresent, misstate or omit any material facts.  The
                   Applicant agrees to notify us of any material changes in the answers to the questions
                   on this questionnaire which may arise prior to the effective date of any policy issued
16                 pursuant to this questionnaire and the Applicant understands that any outstanding
                   quotations may be modified or withdrawn based upon such changes at our sole
17                 discretion.   Completion of this form does not bind coverage.   Applicant's
                   acceptance of the company's quotation is required prior to binding coverage and
                   policy issuance.  All written statements and materials furnished to the company in
18                 conjunction with this application are hereby incorporated by reference into this
                   application and made a part of this application.

19
                                                  6

20          CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF

*See* Ex. D, p. 7. Mr. Wildt was, at the time of execution of the 2017-18 Application, a vice-president of SIP.

29.     Question 6 of the 2017-18 Application asked:

> 6.     After inquiry with each person as appropriate, are you, or any of your partners, officers, directors, solicitors, agents, brokers or employees, aware of any circumstances, acts, errors, omissions, or any allegations or contentions of any incident which may result in a claim?

30.     SIP answered "no" to this question.

31.     In reliance upon the accuracy and completeness of the information provided to CSIC during the underwriting process, including the 2017-18 Application, CSIC issued Insurance Agents and Brokers Professional Liability Policy No. IA2014073-04 (the "2017-18 Policy") to SIP, for the claims made policy period from September 1, 2017 to September 1, 2018.

## The Underwriting and Issuance of the 2018-19 Policy

32.     In July 2018, SIP once again applied for renewal of coverage from CSIC.

33.     In connection with its effort to procure insurance from CSIC, SIP submitted an application for insurance, a copy of which is attached hereto as Exhibit E (the "2018-19 Application").

34.     The 2018-19 Application was executed by Mr. Wildt on behalf of the SIP on or about July 17, 2018, with the following representations:

> The Applicant acknowledges that the answers provided herein are based on a reasonable inquiry and/or investigation. The Applicant warrants that the above statements and particulars together with any attached or appended documents are true and complete and do not misrepresent, misstate or omit any material facts. The Applicant agrees to notify us of any material changes in the answers to the questions on this questionnaire which may arise prior to the effective date of any policy issued pursuant to this questionnaire and the Applicant understands that any outstanding quotations may be modified or withdrawn based upon such changes at our sole discretion. Completion of this form does not bind coverage. Applicant's acceptance of the company's quotation is required prior to binding coverage and policy issuance. All written statements and materials furnished to the company in conjunction with this application are hereby incorporated by reference into this

CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF

application and made a part of this application.

*See* Ex. E, p. 7.  Mr. Wildt was, at the time of execution of the 2018-19 Application, a vice-president of SIP.

35.    Question 6 of the 2018-19 Application asked:

> 6.    After inquiry with each person as appropriate, are you, or any of your partners, officers, directors, solicitors, agents, brokers or employees, aware of any circumstances, acts, errors, omissions, or any allegations or contentions of any incident which may result in a claim?

36.    SIP answered "no" to this question.

37.    In reliance upon the accuracy and completeness of the information provided to CSIC during the underwriting process, including the 2018-19 Application, CSIC issued Insurance Agents and Brokers Professional Liability Policy No. IA2014073-05 (the "2018-19 Policy") to SIP, for the claims made policy period from September 1, 2018 to September 1, 2019.  A copy of the 2018-19 Policy (excluding its Application) is attached hereto as Exhibit F.

**SIP's Error In Procuring Coverage for the Farkouh Companies**

38.    SIP is an insurance agent and broker that engages in the business of procuring policies of liability insurance for its customers from insurers. One of SIP's customers is or was Charles Farkouh.  Mr. Farkouh was the principal of several residential developers and/or builders including Home and Land Development Corp. ("Home and Land") and 78 Washington, LLC ("78 Washington") (collectively, the "Farkouh Companies").

39.    Acting as insurance agent or broker, SIP obtained for the Farkouh Companies a policy of commercial general liability insurance from First Mercury Insurance Company ("First Mercury") for an occurrence policy period of August 4, 2012 to August 4, 2013. Both Home and Land and 78 Washington were insureds under the First Mercury policy.

40.    Acting as insurance agent or broker, SIP obtained for the Farkouh Companies a

8

1

2

3

policy of commercial general liability insurance from Gotham Insurance Company ("Gotham") for an occurrence policy period of August 4, 2013 to August 4, 2014.  Home and Land was an insured under the 2013-14 Gotham policy.  78 Washington was not an insured under the 2013-14 Gotham policy.

4

5

6

7

41.    Upon information and belief, on or before July 13, 2013, SIP submitted the application to Gotham on behalf of the Farkouh Companies. 78 Washington was not insured under the 2013-14 Gotham policy because SIP had neglected to include 78 Washington as an insured in the application for the 2013-14 Gotham policy that SIP submitted to Gotham on behalf of the Farkouh Companies.

8

9

10

42.    In a deposition in the Tipan-Villana Action, SIP employee, David Smith testified that SIP had inadvertently omitted 78 Washington from the application for the Gotham policy and that an "error or omission by [SIP] resulted in 78 Washington Street, LLC having no commercial general liability insurance coverage for the period August 4th, 2013 through August 4th, 2014."

11

12

43.    Upon information and belief, SIP was aware of its error in failing to include 78 Washington as an insured on the 2013-14 Gotham policy no later than March 31, 2014.

13

44.    Upon information and belief, SIP was aware of its error in failing to include 78 Washington as an insured on the 2013-14 Gotham policy no later than July 2014.

14

15

16

17

18

45.    Acting as insurance agent or broker, SIP obtained for the Farkouh Companies a policy of commercial general liability insurance from Gotham Insurance Company for an occurrence policy period of August 4, 2014 to August 4, 2015.  Upon information and belief, the application for insurance that SIP submitted to Gotham included both Home and Land and 78 Washington. Accordingly, Home and Land and 78 Washington were insureds under the 2014-15 Gotham policy.

19

46.    SIP was aware of its error in failing to include 78 Washington as an insured on the

9

1    Gotham policy no later than May 18, 2016.

2    47.    On at least two occasions in May 2016, in an effort to rectify its error in procuring

3    coverage for the Farkouh Companies, SIP requested that Gotham retroactively endorse the 2013-

4    14 Gotham policy to add 78 Washington as an insured. Gotham rejected this request on June 3, 2016.

5    **Tipan-Villana Action**

6    48.    The Tipan-Villana Action is a personal injury action. The Tipan-Villana Action

7    arises out of an injury that Angel Tipan-Villana allegedly suffered while working on construction

8    of a residence in Rumson New Jersey on February 8, 2014.  One or more of the Farkouh Companies was involved in the development and/or construction of the Rumson residence.

9    49.    SIP was aware of Tipan-Villana's accident no later than July 20, 2014.

10    50.    On February 5, 2016, Tipan-Villana filed the Tipan-Villana Action.  Pertinent to

11    this declaratory judgment action, the defendants in the Tipan-Villana Action include Farkouh, Home and Land, and 78 Washington.

12    51.    The alleged injury giving rise to the Tipan-Villana Action occurred during the

13    August 4, 2013 to August 4, 2014 policy period of the 2013-14 Gotham policy. The Farkouh Companies tendered defense of the Tipan-Villana Action to Gotham.

14    52.    Gotham accepted tender of defense on behalf of Home and Land. Gotham declined

15    coverage for the tender by 78 Washington on the ground that 78 Washington was not an insured

16    under the 2013-14 Gotham policy.

17    53.    On or about September 24, 2018, 78 Washington and Farkouh filed a third-party

18    complaint against SIP in the Tipan-Villana Action. 78 Washington's claim arises out of SIP's failure to include 78 Washington as a party insured under the 2013-14 Gotham policy. 78

19    Washington seeks a judgment that SIP is liable to pay the attorneys' fees and costs of 78

10

20

1

2

3

Washington's defense of the Tipan-Villana Action, as well as any judgment or settlement up to the limit of liability of the 2013-14 Gotham policy upon which 78 Washington was not included as an insured.  A copy of the Third-Party Complaint is attached hereto as Exhibit G.

4

5

6

7

54.     SIP tendered its defense of the Third-Party Complaint to CSIC.  As provided for by endorsement to the 2018-19 policy, SIP chose and retained the counsel that has defended SIP against the Third-Party Complaint and CSIC undertook to fund SIP's defense, subject to a reservation of rights.  CSIC agreed to fund SIP's defense without knowledge of, and without reason to know of, SIP's misrepresentations, omissions, and concealment of material information in SIP's applications for the CSIC Policies.

8

**Material Misrepresentations in the Applications SIP Submitted to CSIC**

9

10

11

12

13

14

15

16

17

55.     Question 18 of the 2014-15 Application asked whether SIP had "knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim?" Question 6 on each of the 2015-16, 2016-17, 2017-18, and 2018-19 Applications asked whether SIP was "aware of any circumstances, acts, errors, omissions, or any allegations or contentions of any incident which may result in a claim" against SIP.  SIP's answers of "no" to each of these questions constituted material misrepresentations or omissions.  At the time that it answered "no" to these questions, SIP was aware that it had neglected to include 78 Washington as an insured on the application for the 2013-14 Gotham policy that SIP had procured for the Farkouh Companies. At the time that it answered "no" to these questions, SIP was aware that the 2013-14 Gotham policy that it has procured for the Farkouh Companies did not include 78 Washington as an insured.  At the time that it answered "no" to these questions, SIP was aware that Gotham had declined coverage for 78 Washington under the 2103-14 Gotham policy.

18

19

56.     SIP submitted the 2014-15 Application after SIP had become aware of the accident that gave rise to the Tipan-Villana Action. SIP submitted the 2014-15 Application after SIP had

11

20

become aware of its error in failing to include 78 Washington as an insured on the 2013-14 Gotham Policy - but SIP made no reference to and concealed its error in the 2014-15 Application.

57.     SIP submitted the 2015-16 Application after SIP had become aware of the accident that gave rise to the Tipan-Villana Action. SIP submitted the 2015-16 Application after SIP had become aware of its error in failing to include 78 Washington as an insured on the 2013-14 Gotham Policy. SIP submitted the 2015-16 Application after SIP had corrected its error for the subsequent 2014-15 Gotham policy period by procuring a policy for the Farkouh Companies that insured both Home and Land and 78 Washington - but SIP made no reference to and concealed its error in the 2015-16 Application.

58.     SIP submitted the 2016-17 Application after the filing of suit in the Tipan-Villana Action on July 17, 2016 – less than sixty (60) days after Gotham rejected SIP's effort to rectify SIP's error by refusing to add 78 Washington as an insured under the 2013-14 Gotham policy – but SIP made no reference to and concealed its error in the 2016-17 Application.

59.     During 2018, SIP had numerous communications with Farkouh regarding 78 Washington's defense and the absence of an insurer funded defense for 78 Washington, to the Tipan-Villana Action. On June 11, 2018, Farkouh forwarded to SIP an email that stated "78 Washington, LLC . . .is uninsured because of the issues with the broker with which you are well familiar." The "broker" referred to in this email was SIP.

60.     On July 5, 2018, Gotham's program manager reiterated to SIP that "78 Washington is not a named insured on the [Gotham 2013-14] policy with effective dates of 8/4/13-8/4/14" and stated that Gotham "also denied tender on behalf of 78 Washington. "

61.     SIP submitted the 2018-19 Application on July 17, 2018 – less than forty (40) days after SIP's receipt of the email that stated that 78 Washington was "uninsured because of the issues with the broker" -- – but SIP made no reference in the 2018-19 Application to its failure to include

12

CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF

1   78 Washington as an insured under the 2013-14 Gotham policy.

2   62.   SIP submitted the 2018-19 Application on July 17, 2018 – only twelve (12) days

3   after Gotham's reiteration that coverage was declined for 78 Washington because 78 Washington

4   is not an insured under the 2013-14 Gotham policy-- but SIP made no reference in the 2018-19

    Application to its failure to include 78 Washington as an insured under the 2013-14 Gotham policy.

5   63.   SIP's answers to question 18 on the 2014-15 Application and to Question 6 on each

6   of the 2015-16, 2016-17, 2017-18 and 2018-19 Applications were material misrepresentations or

    omissions and/or concealment of material information.

7   64.   CSIC had no actual knowledge of the matters concealed and/or misrepresented by

8   SIP. CSIC had no constructive knowledge of the matters concealed and/or misrepresented by SIP.

9   65.   If the true facts had been known to CSIC, it either would not have issued the CSIC

10  Policies, including the 2018-19 Policy, or would not have issued the CSIC Policies, including the

    2018-19 Policy, at the same premium or with the same limit of liability or with any coverage with

11  respect to the hazard resulting in the Tipan-Villana Action.

12

13  **CSIC Policy Provisions Apply to Bar Coverage for the Underlying Lawsuit**

    66.   Each of the CSIC Policies contains the following Condition F., captioned

14  "REPRESENTATIONS":

15  1.   By accepting this Policy, the Insured agrees:

16  a.   The statements in the Application, along with any and all attachments
         submitted with the same, or in connection with the Application process
         and furnished to the Company are true, accurate and complete;

17  b.   Those statements furnished to the Company are representations the First
         Named Insured made on behalf of all Insureds;

18  c.   Those representations are a material inducement to the Company to
         issue this Policy;

19  d.   The Company has issued this Policy in reliance upon those

    13

representations; and

e. **If this Policy is part of the renewal of a Policy issued by the Company, the Insured's representations include the representations made in all previous Applications for previous Policies issued by the Company.** (Emphasis added.)

2. It is further agreed, that with respects to any misrepresentations in the Application, the knowledge of any natural person Insured will not be imputed to any other natural person Insured; however, the knowledge of an Executive Office shall be imputed to the First Named Insured or nay Subsidiary of the First Named Insured for the purpose of determining coverage under this Policy.

67. Each of the CSIC Policies contains the following definition of the term "Application":

A. "Application" means:

1. All signed applications, supplemental applications, renewal applications, any attachments thereto, and all other information and materials submitted to the Company by or on behalf of the Insured for the purpose of applying for this Policy, and

2. All applications, supplemental applications, renewal applications, attachments and other information and materials that were attached to or deemed attached to and became part of any policy of insurance of which this Policy is a direct or indirect renewal or replacement.

All such applications, supplemental applications, renewal applications, attachments, information and materials shall be deemed attached to and incorporated into this Policy.

68. Each of the CSIC Policies contains the following definition of the term "Executive Officer":

G. "Executive Officer" means the President, Chief Executive Officer, Managing Partner, Chief Financial Officer, Chief Operating Officer, In-house General Counsel, Risk Manager, or any person in a functionally equivalent position of the First Named Insured.

69. Prior to SIP's submission to CSIC of one or more applications for insurance, SIP personnel having knowledge of SIP's error in procurement of the 2013-14 Gotham policy included, possibly among others, SIP vice-president and Director of Operations Steven G. Wildt,

14

1    SIP vice-president David Wildt, SIP president/CEO Mark Grossbard, David Smith, and Maria

2    Plasencia.

### FIRST CAUSE OF ACTION

3    **(Declaratory Judgment - No Coverage Under the 2018-19 Policy)**

4        70.    CSIC repeats and incorporates by reference the allegations in paragraphs 1 through

5    69 of this complaint as if fully set forth herein.

6        71.    SIP's responses to question no. 18 on the 2014-15 Application and to Question

     number 6 on each of the 2015-16, 2016-17, 2017-18, and 2018-19 Applications were material

7    misrepresentations or omissions of fact required to be disclosed in response to Question number

8    6.

9        72.    The material misrepresentations or omissions referred to above were actually and

     reasonably relied upon by CSIC and were material to CSIC's acceptance of the risk or to the hazard

10   assumed by CSIC in issuing the 2018-2019 Policy.

11       73.    If the true facts had been known to CSIC, it either would not have issued the 2018-

12   19 Policy, or would not have issued the 2018-19 Policy at the same premium or with the same

     limit of liability or with any coverage with respect to the hazard resulting in the Tipan-Villana

13   Action.

14       74.    CSIC is entitled to a judgment that CSIC has no obligation or duty to provide any

15   coverage, including no obligation or duty to defend SIP, for any claims asserted under the 2018-

     19 Policy.

16

### SECOND CAUSE OF ACTION

17   **(Declaratory Judgment—Policies Do Not Afford Defense or Indemnity Coverage for the
     Underlying Lawsuit Pursuant to their Terms, Conditions, Exclusions or Limitations)**

18       75.    CSIC repeats and incorporates by reference the allegations in paragraphs 1 through

19

20   CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF

1

74 of this Complaint as if fully set forth herein.

2

76.     The CSIC Policies only afford defense or indemnity coverage based on their terms,

3

conditions, exclusions, and limitations.

77.     The CSIC Policies do not provide any defense or indemnity coverage for the Third-

4

Party Complaint in the Tipan-Villana Action based on their terms, conditions, exclusions and

5

limitations, and CSIC has never had any duty to defend or indemnify SIP in connection with the

6

Third-Party Complaint.

78.     CSIC is entitled to a judgment declaring that the CSIC Policies provide no defense

7

or indemnity coverage for the Third-Party Complaint in the Tipan-Villana Action and that CSIC

8

does not have and never has had any duty to defend or indemnify SIP in connection with the Third-

9

Party Complaint.

## THIRD CAUSE OF ACTION

10

### (Restitution/Recoupment)

11

79.     CSIC repeats and incorporates by reference the allegations in paragraphs 1 through

12

78 of this Complaint as if fully set forth herein.

80.     CSIC has incurred and will continue to incur costs associated with the defense of

13

SIP against the Third-Party Complaint in the Tipan-Villana Action, subject to a reservation of its

14

rights.

15

81.     The CSIC Policies did not and do not afford any defense or indemnity coverage for

16

the Third-Party Complaint.

82.     CSIC is therefore is entitled to recoup all defense costs it has incurred and will

17

continue to incur from SIP for the defense of the Third-Party Complaint in the Tipan-Villana

18

Action.

19

83.     CSIC is entitled to a judgment that SIP is liable to CSIC for defense costs it paid

16

20

1    but not covered under the CSIC policies.

2                    **PRAYER FOR RELIEF AS TO ALL COUNTS**

3            WHEREFORE, CSIC demands judgment against Defendant as follows:

            1.      On the First Cause of Action, a declaration that CSIC has no obligation to defend

4    or to indemnify SIP against any claims under the 2018-19 Policy;

5            2.      On the Second Cause of Action, a judgment declaring that the 2018-19 Policy does

     not afford any coverage for the Third-Party Complaint;

6            3.      On the Third Cause of Action, a judgment against SIP, in an amount in excess of

7    $25,000 for costs incurred and to be incurred in the defense of SIP against the Third-Party

     Complaint in the Tipan-Villana Action, as established by proof in this action;

8            4.      For costs of suit incurred herein; and,

9            5.      For such other and further relief as the Court deems proper.

     Dated: September 25, 2019                     Respectfully submitted,

10

11                                                 _____*/s/Michael K. Mullen*_____
                                                   Michael K. Mullen, Esq.
                                                   Sandra Calvert Nathans, Esq.
12                                                 Schenck, Price, Smith & King, LLP
                                                   220 Park Avenue
13                                                 Florham Park, NJ  07932-0991
                                                   (973) 239-1000
                                                   mkm@spsk.com; scn@spsk.com
14                                                 ***Attorneys for Plaintiff***
                                                   ***Capitol Specialty Insurance Corporation***

15

16

17

18

19
                                             17

20        CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF

1

**CERTIFICATION**

2
            Pursuant to L. Civ. R. 11.2, the undersigned hereby certifies that there is a related matter

3
entitled *Tipan-Villana v. Farkouh, et al.*, Docket No. ESX-L-912-16, pending in the New Jersey

4
Superior Court, Essex County in which Defendant Strategic Insurance Partners, Inc. has demanded

5
defense and indemnity coverage to be provided by Plaintiff Capitol Specialty Insurance

Corporation.  The undersigned also certifies that other than the lawsuit described above, there is

6
no other lawsuit, arbitration or administrative proceeding pending in any other court arising out of

7
the facts as alleged herein.

Dated: September 25, 2019                             */s/Michael K. Mullen*

8
                                                    Michael K. Mullen, Esq.
                                                    Sandra Calvert Nathans, Esq.
                                                    Schenck, Price, Smith & King, LLP

9
                                                    220 Park Avenue
                                                    Florham Park, NJ  07932-0991

10
                                                    (973) 239-1000
                                                    mkm@spsk.com; scn@spsk.com
                                                    ***Attorneys for Plaintiff***

11
                                                    ***Capitol Specialty Insurance Corporation***

12

13

14

15

16

17

18

19

20
CAPITOL SPECIALTY INSURANCE CORPORATION COMPLAINT FOR DECLARATORY RELIEF